J-S48003-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BEVERLY BRYANT | : | |
| | : | |
| Appellant | : | No. 433 EDA 2020 |

Appeal from the PCRA Order Entered January 21, 2020,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0009384-2016.

BEFORE:  KUNSELMAN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY KUNSELMAN, J.:              **FILED:  JANUARY 29, 2021**

Beverly Bryant appeals from the order denying her first timely petition filed pursuant to the Post Conviction Relief Act ("PCRA").  42 Pa.C.S.A. §§ 9541-46.  We affirm.

On March 22, 2017, a jury convicted Bryant of intimidation of a witness, criminal use of a communication facility, possessing an instrument of crime, and terroristic threats. Thereafter, the trial court sentenced Bryant to an aggregate term of six to twenty-three months of incarceration and a consecutive two-year probationary term.  Following the denial of a post-sentence motion, Bryant filed a timely appeal to this Court.  In its Rule 1925(a) opinion, the trial court summarized the testimony supporting Bryant's convictions as follows:

At trial, the Commonwealth presented the testimony of complainant Rebecca Stokes. Ms. Stokes testified that, in 2011, she began renting a house located at 5533 Mascher Street in Philadelphia. [Bryant's] mother, Barbara Bryant, was the owner and landlord of the property. In July, 2015, Ms. Stokes and Barbara Bryant started to have landlord/tenant issues. Angered over a rent balance of $350, Barbara Bryant showed up at the residence with a gentleman named Jerome on November 23, 2015. Jerome stuck the barrel of a shotgun through the front door's mail slot, while he and Barbara Bryant yelled at Ms. Stokes to vacate the premises. When the shotgun was removed, Ms. Stokes peered through the mail slot and saw Barbara Bryant and Jerome enter a blue Jeep and drive away. Ms. Stokes immediately called the police to report the incident. She subsequently met with detectives for an interview, and on December 23, 2015, Barbara Bryant was placed under arrest.

On August 23, 2016, at approximately 9:00 a.m., Ms. Stokes appeared for court pursuant to a subpoena in Barbara Bryant's criminal case. The proceeding was scheduled before Judge Perez in courtroom 704. Ms. Stokes testified that when she exited the elevator on the 7th floor, she saw [Bryant] and her mother, Barbara Bryant, standing outside the courtroom. The two immediately began calling her a "fat bitch" and "gorilla bitch". Ms. Stokes giggled at their insults, at which point [Bryant] stated, "It's all right. You can laugh now. When you get out of the courtroom, I'm going to have you killed, bitch." Ms. Stokes testified that she felt scared for her life, particularly since she already had the encounter with [Bryant's] mother, Barbara Bryant and her friend, Jerome, who pointed a shotgun [] at her. Ms. Stokes quickly entered the courtroom to speak with the assistant D.A., Ms. [Laquan] Lightfoot. A.D.A. Lightfoot was in the middle of another case, so Ms. Stokes texted her boyfriend that she had just been threatened, she was scared, and to please come down to the courthouse.

Shortly thereafter, A.D.A. Lightfoot summoned Ms. Stokes into the hallway. When she started to speak with A.D.A. Lightfoot. Ms. Stokes saw [Bryant] holding and pointing her cell phone with the flash on - - indicating to Ms. Stokes that [Bryant] was taking pictures of them. A.D.A. Lightfoot asked a police officer to go over to [Bryant] and

tell her to stop taking pictures. The officer walked over and, upon observing [Bryant's] phone, stated, "[I]t's not a picture . . . She's taking a video." A.D.A. Lightfoot asked for the phone, but [Bryant] refused to comply. The officer attempted to retrieve it, but [Bryant] resisted: "She was fighting for the phone." Ms. Stokes testified that [Bryant's] filming her made her feel even "more threatened".

The Commonwealth also presented the testimony of Philadelphia Police Officer Kevin Klein. Officer Klein testified that, on August 23, 2016, he was inside the [c]ourthouse in the hallway on [the] 7th floor, waiting to speak to A.D.A. Lightfoot about an unrelated case. As he was standing there, he noticed [Bryant] standing to the right of him, holding a cell phone sideways with the camera flash "steady on". A.D.A Lightfoot asked him if [Bryant] was taking photographs of her and Ms. Stokes. Officer Klein walked behind [Bryant] and observed that she was actually recording a video of them, and relayed that information to A.D.A Lightfoot. A.D.A. Lightfoot told him to "hold on a second" and went into the courtroom. She returned one minute later and advised that the judge needed to see [Bryant] in the courtroom. At that point, Officer Klein observed [Bryant] quickly scrolling through her photos/videos, so he confiscated her phone to prevent her from destroying evidence. He escorted [Bryant] into the courtroom and placed the phone down on counsel's desk. Approximately 30 minutes later, A.D.A. Lightfoot informed him that the Commonwealth would be pressing charges against [Bryant]. Officer Klein, accompanied by [two other officers], in addition to the sheriff, attempted to escort [Bryant] out of the courtroom to place her under arrest. [Bryant], however, held her hands very tight against her body and vehemently resisted. It took all four agents to place her in handcuffs.

Trial Court Opinion, 4/5/18, at 2-4 (citations omitted).[1]

_____

[1] The Commonwealth also called A.D.A. Lightfoot at Bryant's trial, and her testimony was largely consistent with that presented by Officer Klein.

In her direct appeal, Bryant raised six issues, including a claim that the Commonwealth's "failure to disclose and turn over to the defense that Officer Klein was on a 'do not call to testify' list" constituted a **Brady**[2] violation, and was "a material fact that should have been presented to the jury[.]" **Bryant**, unpublished memorandum at 3 (excess capitalization omitted).

On January 8, 2019, we adopted the trial court's Rule 1925(a) opinion as our own in rejecting Bryant's claims. **Id.** at 8-9.

Bryant filed a *pro se* PCRA petition on January 17, 2019, and the PCRA court appointed counsel. PCRA counsel filed an amended petition on July 12, 2009. In this amended petition, Bryant asserted that "[a]ppellate counsel was ineffective for failing to file for consideration before the Superior Court panel." PCRA Petition, 7/12/19, at 4.

The PCRA court held a hearing on January 21, 2021, at which the parties discussed the issue raised in the amended petition. Although the PCRA court offered to issue a Pa.R.Crim. 907 notice of its intent to dismiss Bryant's petition without an evidentiary hearing, because Bryant was present, PCRA counsel agreed that a Rule 907 notice was not needed. **See** N.T., 1/21/20, at 7-8. At the conclusion of the hearing, the PCRA court denied Bryant's petition. This timely appeal followed. Both Bryant and the PCRA court have complied with Pa.R.A.P. 1925.

---

[2] **Brady v. Maryland**, 373 U.S. 83 (1963).

Bryant now raises the following issues:

> I.    Whether the [PCRA] court was in error in denying [Bryant's] PCRA petition without an evidentiary hearing on the issues raised in the amended PCRA petition regarding [] counsel's ineffectiveness.

> II.   Whether the [PCRA] court erred in not granting relief on the PCRA petition alleging counsel was ineffective.

Bryant's Brief at 8.

Our scope and standard of review is well settled:

> In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party.  Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

*Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 779 (Pa. Super. 2015)

(citations omitted).

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Blakeney*, 108 A.3d 739, 750 (Pa. 2014) (citations

omitted).

Bryant claims that the PCRA court erred in dismissing, without a hearing, her claim that appellate counsel was ineffective for failing to file with this Court a motion to reconsider the denial of her appeal based on an alleged factual error made by the panel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission. *Id.* at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

To support her claim of ineffectiveness, Bryant avers "appellate counsel was ineffective for failing to correct a crucial issue on appeal." Bryant's Brief at 20. She further argues:

The Superior Court had a critical issue in the argument regarding Officer Klein incorrect. Counsel should have asked for a reconsideration of the appeal before the three judge panel or court en banc.

\*\*\*

The Superior Court's statement that Officer Klein's placement on the "do not call" list occurred after [Bryant's] trial is erroneous. [Bryant's] trial was in August 2017 (the Superior Court Opinion states that trial was in August of 2016)[.] The incident leading to Officer Klein's placement on the list occurred in December of 2016, about eight months before [Bryant's] trial. The significance of March 2018 is only that is when the list was publicized. Thus, at the time of trial, the District Attorney's Office already considered Officer Klein to be an unreliable witness but failed to notify [Bryant].

\*\*\*

The Commonwealth's case was primarily based upon testimony from this discredited officer.

Bryant's Brief at 20-21 (emphasis omitted).

The PCRA court found no merit to Bryant's claim. The court first made the following observations:

[Bryant's] trial, in fact, took place in March 2017. Officer Klein was convicted of simple assault, driving under the influence and leaving the scene of an accident on August 16, 2018. The incident giving way to the conviction occurred on December 14, 2016. Although it is unknown when Officer Klein was placed on the "do not call" list, he was on that list at the time of [Bryant's] trial. The officer's misconduct occurred four (4) months after the incident on August 23, 2016, that gave rise to the instant case.

PCRA Court Opinion, 3/16/20, at 3 (unnumbered).

The court, citing our decision on direct appeal, then reasoned as follows:

In her Amended Petition, [Bryant] points out that the Superior Court made an error in the date of [her] trial and that it failed to note that the "do not call list" was publicized in March 2018. **However, the fact remains that the Superior Court held that [Bryant] waived her *Brady* claim altogether**. The additional finding that "even if [Bryant] properly preserved her [*Brady*] claim, she would not be entitled to relief" is just that: an additional finding. Notwithstanding the error in the dates, the Superior Court found that "even if the court discounted Officer Klein's testimony, two other witnesses testified to their observations of [the] underlying incident, and [Bryant's] proclamation she had [the] right to record [Ms. Stokes] with her cell phone corroborated witnesses' testimony. . . " The [Superior] Court itemizes four (4) additional reasons why [Bryant] would not be entitled to relief notwithstanding her *Brady* claim.

PCRA Court Opinion, 3/16/20, at 4 (unnumbered) (emphasis in original).

Our review of the record, including this Court's prior memorandum, supports the PCRA court's conclusion. In our decision on direct appeal, although we chose not to restate the trial court's summary of facts as enumerated above, we did note that the jury convicted Bryant in 2017. ***Bryant***, unpublished memorandum at 1. Thus, our statement in the parenthetical supporting our adoption of the trial court's opinion that Bryant's trial occurred in 2016 is clearly a typographical error.

In addition, the misstatement regarding when Officer Klein was placed on the "do not call" list is of no significance, given our conclusion that even without Officer Klein's testimony, the testimony of two other witnesses supported the jury's guilty verdicts.

Bryant's claims to the contrary are unavailing. Initially, we note that Bryant does not claim appellate counsel was ineffective for failing to preserve the **Brady** issue on direct appeal; rather, she focuses on counsel's failure to seek panel reconsideration. In addition, although Bryant presents the tripartite test for ineffective assistance, she does not create a factual issue as to how Officer Klein's misconduct and placement on the "do not call list" relates in any way to her case. As the PCRA court stated, "[Bryant] has not demonstrated that she ever requested that appellate counsel pursue reconsideration by the Superior Court, nor has she shown that there is a reasonable probability that reconsideration would have been granted." PCRA Court Opinion, 3/16/20, at 3 (unnumbered). Thus, the PCRA court did not err in denying her PCRA petition without first holding an evidentiary hearing.

In sum, because our review of the record supports the PCRA court's denial of Bryant's PCRA petition, we affirm the order denying Bryant post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/29/21